**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————————x

**PAUL P. TANICO,**

               Plaintiff,                          Civil Action No.  26-cv-4907

     —against—                                 <u>**COMPLAINT**</u>

**NEURODIAGNOSTICS, INC. d/b/a SYNAPS DX,**

               Defendant.

——————————————————————————x

    Plaintiff Paul P. Tanico ("Plaintiff" or "Tanico"), by and through his undersigned counsel, as and for his Complaint against Defendant NeuroDiagnostics, Inc. d/b/a Synaps Dx ("Defendant" or "Synaps Dx"), avers as follows:

<u>**THE PARTIES**</u>

    1.     Plaintiff Paul P. Tanico is an individual domiciled and residing in the State, City and County of New York and is a citizen of the State of New York.

    2.     Defendant NeuroDiagnostics, Inc. d/b/a Synaps Dx is a corporation incorporated in the State of Delaware, having its principal place of business in the State of Maryland, located at 12358 Parklawn Drive, Rockville, Maryland 20852. Defendant is therefore a citizen of the States of Delaware and Maryland.

<u>**JURISDICTION AND VENUE**</u>

    3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of

-1-

interest and costs, and is between citizens of different states. Plaintiff is a citizen of the State of New York; Defendant is a citizen of the States of Delaware and Maryland. Complete diversity of citizenship exists between the parties.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District, including the performance of consulting services by Plaintiff and the communications and negotiations between the parties concerning such services and the payment obligations therefor.

5.     This Court has personal jurisdiction over Defendant because it has transacted business within the State of New York, entered into a contract with a New York resident to be performed in substantial part within the State of New York, and is otherwise subject to the jurisdiction of this Court under New York's long-arm statute, CPLR 302, and/or is present in New York under CPLR 301.

## FACTUAL ALLEGATIONS

### The Consulting Agreement

6.     On or about November 1, 2021, Plaintiff and Defendant entered into a written Consulting Agreement (the "Agreement"), effective as of November 1, 2021, a true and correct copy of which is attached as Exhibit A and incorporated by reference.

7.     Under the Agreement, Plaintiff agreed to act as Chief Strategist and to provide consulting services to Defendant's management as Defendant may request from time to time (the "Consulting Services").

8.    In consideration of the Consulting Services, Defendant agreed to pay Plaintiff: (a) $150,000 per year in consulting fees; and (b) an initial bonus of $50,000, for a total of $200,000 in the first Agreement year alone (collectively, the "Compensation").

9.    The initial term of the Agreement ran from November 1, 2021 through October 30, 2022, and automatically renewed for successive one-year terms thereafter unless terminated by either party upon thirty (30) days' prior written notice.

10.    On April 22, 2026, Plaintiff gave written notice termination of the Agreement (effective May 22, 2026 under the terms of the Agreement).

11.    Prior to Plaintiff's termination of the Agreement, Defendant had not terminated the Agreement in the manner required thereby and thus the Agreement remained in force.

12.    Defendant had also agreed to reimburse Plaintiff for all reasonable and necessary travel and other expenses incurred in connection with the performance of the Consulting Services, subject to advance approval by Defendant.

13.    The Agreement constitutes a written contract for freelance services between Plaintiff, a freelance worker, and Defendant, a hiring party, within the meaning of the New York City Freelance Isn't Free Act, N.Y.C. Admin. Code § 20-927 *et seq*. (the "NYC FIFA"), and the New York State Freelance Isn't Free Act, N.Y. Lab. Law §§ 2101-2106 (the "NY State FIFA").

14.    The Compensation owed to Plaintiff under the Agreement exceeds $800, whether calculated for a single engagement or in the aggregate over the 120-day period preceding the date of completion.

15.    Defendant failed to pay Plaintiff the Compensation by the date(s) specified in the Agreement or, in any event, within thirty (30) days of Plaintiff's completion of the Consulting Services, in violation of the NYC FIFA and the NY State FIFA.

**Plaintiff's Performance**

16.     Plaintiff duly and fully performed all of his material obligations under the Agreement. From November 1, 2021 forward, Plaintiff provided the Consulting Services to Defendant as Chief Strategist (or alternative designations), applying his specialized knowledge, expertise, and experience to Defendant's business as requested.

17.     Plaintiff at all times and through the termination of the Agreement was ready, willing, and able to perform under the Agreement and made himself available to provide the Consulting Services throughout the Agreement Period.

**Defendant's Breach**

18.     Notwithstanding Plaintiff's full and faithful performance, Defendant has failed and refused to pay Plaintiff the Compensation owed under the Agreement. As of the date of this Complaint, Defendant has failed to pay Plaintiff at least $426,385 in consulting fees and other amounts due and owing under the Agreement, exclusive of interest.

19.     Prior to commencement of this action, Plaintiff demanded payment of all amounts due and owing under the Agreement. Despite such demand, Defendant has failed, refused, and neglected to make payment.

20.     No justification, excuse, or defense exists for Defendant's failure to pay the Compensation owed to Plaintiff under the Agreement.

21.     As a direct and proximate result of Defendant's breach and violations, Plaintiff has been damaged in an amount to be determined at trial, but not less than $426,385, together with statutory double damages, attorneys' fees, prejudgment interest, costs, and disbursements.

## FIRST CLAIM
### (Breach of Contract)

22.     Plaintiff incorporates by reference each of the above averments.

23.     The Agreement constitutes a valid, binding, and enforceable contract between Plaintiff and Defendant, supported by adequate consideration.

24.     Plaintiff duly performed his material obligations under the Agreement.

25.     Defendant has materially breached the Agreement by failing and refusing to pay Plaintiff the Compensation and other amounts due and owing thereunder, including, without limitation, consulting fees of $150,000 per year in the aggregate amount of $426,385, demand for which has been made and hereby is made.

26.     As a direct and proximate result of Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial, but not less than $426,385, plus prejudgment interest at the applicable statutory rate.

## SECOND CLAIM
### (Unjust Enrichment—Pleaded in the Alternative)

27.     Plaintiff incorporates by reference each of the above averments.

28.     Plaintiff rendered valuable Consulting Services to Defendant, and Defendant accepted and retained the benefit of such services.

29.     Defendant has been unjustly enriched at Plaintiff's expense by retaining the benefit of Plaintiff's Consulting Services without paying the Compensation or any other amount due therefor.

30.     It would be against equity and good conscience to permit Defendant to retain the benefit of Plaintiff's services without compensating Plaintiff for the fair and reasonable value thereof.

31.    By reason of the foregoing, Plaintiff is entitled to recover from Defendant the fair and reasonable value of the Consulting Services rendered, in an amount to be determined at trial, but not less than $900,000, demand for which hereby is made.

### THIRD CLAIM
**(New York City Freelance Isn't Free Act, N.Y.C. Admin. Code § 20-927 *et seq*.)**

32.    Plaintiff incorporates by reference each of the above averments.

33.    At all relevant times, Plaintiff was a "freelance worker" as defined by N.Y.C. Admin. Code § 20-927, in that he is a natural person hired or retained as an independent contractor to provide services in exchange for compensation.

34.    At all relevant times, Defendant was a "hiring party" as defined by N.Y.C. Admin. Code § 20-927.

35.    The Agreement is a contract for freelance services valued in an amount equal to or greater than $800, whether by virtue of a single contract or the aggregation of all contracts between Plaintiff and Defendant within the immediately preceding 120 days. Accordingly, the Agreement satisfies the written contract requirement of N.Y.C. Admin. Code § 20-928(a).

36.    Pursuant to N.Y.C. Admin. Code § 20-929(a), Defendant was required to pay Plaintiff the Compensation by the date(s) specified in the Agreement or, where the Agreement does not specify a payment date, no later than thirty (30) days after the completion of the Consulting Services, demand for which hereby is made.

37.    Defendant violated N.Y.C. Admin. Code § 20-929(a) by failing to pay Plaintiff the Compensation by the required date(s).

38.     Pursuant to N.Y.C. Admin. Code § 20-933(b), Plaintiff is entitled to recover: (i) an amount equal to the unpaid Compensation; (ii) double damages (i.e., an additional amount equal to the unpaid Compensation); (iii) injunctive relief; (iv) attorneys' fees and costs; and (v) such other remedies as the Court deems appropriate.

39.     By reason of the foregoing, Plaintiff has suffered damages and is entitled to recover from Defendant, pursuant to N.Y.C. Admin. Code § 20-933, the unpaid Compensation plus an equal amount as double damages, together with reasonable attorneys' fees, costs, and injunctive and declaratory relief as appropriate.

**FOURTH CLAIM**
**(New York State Freelance Isn't Free Act, N.Y. Lab. Law §§ 2101–2106)**

40.     Plaintiff incorporates by reference each of the above averments.

41.     The New York State Freelance Isn't Free Act, codified at N.Y. Lab. Law §§ 2101-2106 (the "NY State FIFA"), became effective on August 28, 2023, and applies to freelance service contracts entered into or renewed on or after that date.

42.     Because the Agreement provides for automatic annual renewal, the Agreement renewed on or about November 1, 2023, after the effective date of the NY State FIFA, and accordingly the NY State FIFA applies to the Consulting Services performed and Compensation due on and after that renewal date.

43.     At all relevant times since August 28, 2023, Plaintiff has been a "freelance worker" as defined by N.Y. Lab. Law § 2101(a), in that he is a natural person who is hired or retained as an independent contractor to provide services in exchange for compensation.

44.     At all relevant times since August 28, 2023, Defendant has been a "hiring party" as defined by N.Y. Lab. Law § 2101(b).

45.     The Compensation owed to Plaintiff under the Agreement equals or exceeds $800, whether by virtue of a single contract or contracts in the aggregate within the immediately preceding 120-day period, satisfying the written contract and threshold requirements of N.Y. Lab. Law § 2102.

46.     Pursuant to N.Y. Lab. Law § 2103, Defendant was required to pay Plaintiff the Compensation due after August 28, 2023 by the date(s) specified in the Agreement or, where no date is specified, within thirty (30) days after the completion of the Consulting Services, demand for which has been made and hereby is made.

47.     Defendant has violated N.Y. Lab. Law § 2103 by failing to pay Plaintiff the Compensation due after August 28, 2023 by the required date(s).

48.     Pursuant to N.Y. Lab. Law § 2106, Plaintiff is entitled to recover: (i) the unpaid Compensation; (ii) double damages (an additional amount equal to the unpaid Compensation); (iii) injunctive relief; (iv) attorneys' fees and costs; and (v) such other relief as the Court deems appropriate.

49.     By reason of the foregoing, Plaintiff has suffered damages and is entitled to recover from Defendant, pursuant to N.Y. Lab. Law § 2106, the unpaid Compensation due on and after August 28, 2023 plus an equal amount as double damages, together with reasonable attorneys' fees, costs, and such other relief as the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul P. Tanico respectfully demands judgment against Defendant NeuroDiagnostics, Inc. d/b/a Synaps Dx as follows:

(a)  On the First Claim, compensatory damages in an amount to be determined at trial but not less than $426,385, plus prejudgment interest at the applicable statutory rate from the date each payment was due;

(b)  On the Second Claim, the fair and reasonable value of Plaintiff's Consulting Services in an amount to be determined at trial but not less than $900,000;

(c)  On the Third Claim, pursuant to N.Y.C. Admin. Code § 20-933: (i) the full amount of unpaid Compensation; (ii) an additional equal amount as double damages; (iii) reasonable attorneys' fees and costs; and (iv) injunctive and declaratory relief as appropriate;

(d)  On the Fourth Claim, pursuant to N.Y. Lab. Law § 2106: (i) the full amount of unpaid Compensation due on and after August 28, 2023; (ii) an additional equal amount as double damages; (iii) reasonable attorneys' fees and costs; and (iv) injunctive and declaratory relief as appropriate;

(e)  Pre- and post-judgment interest at the maximum rate permitted by applicable law on all amounts awarded;

(f)  Plaintiff's costs and disbursements in this action; and

(g)  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated:  June 9, 2026

_____
Andrew P. Saulitis

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Plaintiff Paul P. Tanico*
40 Wall Street–37th Floor
New York, New York 10005
(212) 459-0900 | (917) 202-4400
apslaw@msn.com

TO:

NeuroDiagnostics, Inc. d/b/a Synaps Dx
12358 Parklawn Drive
Rockville, Maryland 20852

-10-

<u>CONSULTING AGREEMENT</u>

THIS IS A CONSULTING AGREEMENT (this "<u>Agreement</u>") effective as of November 1, 2021 by and between NeuroDiagnostics, Inc. dba Synaps Dx, a Delaware corporation (the "<u>Company</u>"), and Paul P. Tanico, an individual (the "<u>Consultant</u>").

**BACKGROUND**

WHEREAS, the Consultant has special knowledge, expertise and experience applicable to the business of the Company; and

WHEREAS, the Company desires to have access to the Consultant's knowledge, expertise and experience, and the Consultant is willing to provide the same to the Company.

**TERMS**

In consideration of the mutual covenants contained herein and intending to be legally bound hereby, the Company and the Consultant agree as follows:

1. <u>Term of the Agreement</u>.  The term of this Agreement shall begin on the Effective Date and continue until October 30, 2022, unless terminated earlier by either party pursuant to Section 6 (the "<u>Agreement Period</u>"). The term shall automatically be renewed for successive one-year terms thereafter unless terminated prior to the end of a term by either party in its sole discretion.

2. <u>Consultant Services</u>.  During the Agreement Period, the Consultant shall act as Chief Strategist and shall provide such consulting services to the Company's Management as the Company may request from time to time.

3. <u>Compensation</u>. In consideration of the foregoing Consultant Services, the Company will pay Consultant $150,000 per year, plus an initial bonus of $50,000. During the Agreement Period, the Company also shall reimburse the Consultant for all reasonable and necessary travel and other expenses incurred by the Consultant in connection with the performance of the Consulting Services, such expenses to be approved in advance by Company.

4. <u>Confidential Information</u>. The Consultant shall not, during or after the Agreement Period, without the prior express written consent of the Company, directly or indirectly use or divulge, disclose or make available or accessible any Confidential Information (as defined below) to any individual, partnership, limited liability company, corporation, association, joint stock company, trust, joint venture, unincorporated organization, investment fund, or any other business or governmental entity (other than when required to do so in good faith to perform the Consultant Services or when required to do so by a lawful order of a court of competent jurisdiction, any governmental authority or agency, or any recognized subpoena power). In the event that the Consultant becomes legally compelled (by oral questions, interrogatories, request for information

1

**EXHIBIT A TO COMPLAINT**

or documents, subpoena, criminal or civil investigative demand or similar process) to disclose any of the Confidential Information, then prior to such disclosure, the Consultant will provide the Company with prompt written notice so that the Company may seek (with the Consultant's cooperation) a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.  In the event that such protective order or other remedy is not obtained, then the Consultant will furnish only that portion of the Confidential Information which the Consultant is advised by counsel is legally required and will cooperate with the Company in the Company's efforts to obtain reliable assurance that confidential treatment will be accorded to the Confidential Information.  For purposes of this Agreement, "Confidential Information" shall mean all information respecting the business and activities of the Company or any affiliate of the Company, including, without limitation, the clients, customers, suppliers, employees, consultants, projects, products and services, marketing plans, financial information, technology, methodologies, know-how, projections, forecasts, trade secrets, and/or strategies of the Company or any affiliate of the Company.

Confidential Information shall include all business, technical, human resources, marketing, regulatory and financial information disclosed by Company to Consultant.

Notwithstanding the immediately preceding sentence, Confidential Information shall not include information that (a) is or becomes publicly available through no action on the part of the Consultant; (b) is lawfully obtained from any source other than the Company without an obligation to keep it confidential; (c) is previously known to the Consultant without an obligation to keep it confidential, as can be substantiated by written records; (d) is expressly released from the obligations of confidentiality imposed by this Agreement by the Company in writing; and (e) is required to be disclosed pursuant to any applicable law, regulation, judicial or administrative order or decree; provided, however, that the Consultant shall first have given prior written notice to the Company to enable the Company to seek a protective order or other relief from disclosure.

5.    Ownership of Property.  The Consultant acknowledges that all discoveries, concepts, ideas, inventions, innovations, improvements, developments, methods, processes, programs, designs, analyses, drawings, reports, copyrightable work (and all registrations or applications related thereto) that are conceived, developed, contributed to, made, or reduced to practice by the Consultant (either solely or jointly with others) while engaged by the Company that relate to: i) the Company's diagnostic and/or therapeutic products and services respecting neurodegenerative conditions, or any other science as to which Consultant provides consulting services to the Company, ii) the Company's research and development, or iii) the subject matter of the patent portfolio licensed to the Company by West Virginia University (hereinafter collectively "Work Product") belong to the Company and the Consultant hereby assigns, and agrees to assign, all of the Work Product to the Company. Any copyrightable work prepared in whole or in part by the Consultant in the course of providing the Consultant Services shall be deemed a "work made for hire" under the copyright laws, and the Company shall own all rights therein. To the extent that any such copyrightable work is not a "work made for hire," the Consultant hereby assigns and agrees to assign to the Company all right, title, and interest, including without limitation, copyright in and to such copyrightable work. The Consultant shall

2

promptly disclose such Work Product and copyrightable work to the Company and perform all actions reasonably requested by the Company (whether during or after the Agreement Period) to establish and confirm the ownership of the Company or such affiliate of the Company (including, without limitation, assignments, consents, powers of attorney and other instruments).

6.  Termination.

a)  At Will: This agreement will be at will. Either party may terminate this Agreement, for any reason, upon 30 days' notice.

b)  For Cause: Notwithstanding anything to the contrary herein, the Company may immediately terminate this Agreement at any time, for "Cause". "Cause" shall include but shall not be strictly limited to the determination by the Company that Consultant has committed an act constituting a felony or other crime involving moral turpitude, dishonesty, theft or fraud.

7.  Return of Documents and Property. Upon the termination of this Agreement, or at any other time upon request by the Company, the Consultant (or the Consultant's heirs or personal representative) shall deliver to the Company, without retaining any copies, notes or excerpts thereof, all memoranda, computer disks or other media, computer programs, diaries, notes, records, data, customer or client lists, marketing plans and strategies, and any other documents consisting of or containing Confidential Information, as well as all other documents, materials and other property belonging to the Company or its affiliates, customers or clients, that are in the Consultant's actual or constructive possession or which are subject to the Consultant's control at such time.

8.  Enforcement.  The Consultant further acknowledges that in the event of the Consultant's breach or threatened breach of Sections 4-5 or 7 of this Agreement, the Company, in addition to any other legal remedies which may be available to it, shall be entitled to appropriate injunctive relief and/or specific performance in order to enforce or prevent any violations of such provisions, and the Consultant and the Company hereby confer jurisdiction to enforce such provisions upon the courts of the state of Delaware.

9.  Independent Contractor.  It is mutually understood and agreed that, in providing the Consultant Services, the Consultant is acting and performing as an independent contractor and not an employee or agent of the Company. The Consultant shall not make any representations to being an employee or agent of the Company and shall pay all federal, state and local taxes which shall be become due on any money paid to the Consultant by the Company under the terms of this Agreement.  Consultant hereby acknowledges and agrees that this Agreement does not entitle the Consultant to participate in or receive coverage under any benefit plan, program or arrangement of the Company with respect to the performance of the Consultant Services.

10.  No Authority to Bind the Company.  All Consultant Services provided by the Consultant shall be performed by the Consultant directly and independently and not as an agent, employee or representative of the Company.  This Agreement is not intended to and does not constitute, create or otherwise give rise to a joint venture, partnership or other type of business

3

association or organization of any kind by or between the Company and the Consultant. Specifically, and without limitation, the Consultant shall have no power or authority to contract for, or bind, the Company in any manner.

11.    Personal Performance of Work and Nonassignability.  The Consultant Services shall be provided personally by the Consultant.  The Consultant may not assign any rights or performance obligations under this Agreement to any other party.  Any attempt to make such an assignment will be void.

12.    Notices.  All notices given pursuant to this Agreement shall be in writing and shall be directed as follows (or to such other address as a party shall designate by notice hereunder):

> To the Company:
>
> NeuroDiagnostics, Inc. dba Synaps Dx
> 12358 Parklawn Drive
> Rockville, MD 20852
> Attn.: Frank Amato
>
>
> To the Consultant:
>
> at the address listed in the Company's records

13.    Binding Effect.  This Agreement shall inure to the benefit of and shall be binding upon the Company and the Consultant and their respective heirs, executors, personal representatives, successors and permitted assigns.

14.    Amendment and Waiver.  The provisions of this Agreement may be amended only with the prior written consent of the Company and the Consultant.  Any term or provision of this Agreement may be waived in writing at any time by the party entitled to the benefit thereof.  The failure of either party at any time to require performance of any provision of this Agreement shall not affect such party's right at a later time to enforce such provision.  No consent or waiver by either party to any default or to any breach of a condition or term in this Agreement shall be deemed or construed to be a consent or waiver to any other breach or default.

15.    Survival.  Anything contained in this Agreement to the contrary notwithstanding, the provisions of Sections 5-14, and the other provisions of this Agreement (to the extent necessary to effectuate the survival of Sections 5-14), shall survive termination of the Agreement Period and this Agreement.

16.    Entire Agreement.  This Agreement contains the entire agreement between the parties relative to its subject matter, superseding all prior agreements or understandings of the parties relating thereto.  This Agreement may be amended, modified or superseded only by a written instrument executed by both of the parties hereto.

4

17.     Severability.  The provisions of this Agreement are intended to be interpreted in a manner which makes them valid, legal, and enforceable.  In the event any provision of this Agreement is found to be partially or wholly invalid, illegal or unenforceable, such provision shall be modified or restricted to the extent and in the manner necessary to render it valid, legal, and enforceable.  It is expressly understood and agreed between the Consultant and the Company that such modification or restriction may be accomplished by mutual accord between the parties or, alternatively, by disposition of a court of law.  If such provision cannot under any circumstances be so modified or restricted, it shall be excised from this Agreement without affecting the validity, legality or enforceability of any of the remaining provisions.

18.     Governing Law.  This Agreement shall be governed by the laws of the State of Delaware without reference to principles of conflict of laws.

19.     Execution.  This Agreement may be executed in counterparts and will be valid even though the signatures of all parties do not appear on the same page.

[*signature page follows*]

5

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

Consultant                                          NeuroDiagnostics, Inc. dba Synaps Dx

_____                                _____
Name:Paul P. Tanico                                 Name:  Frank Amato
                                                    Title:   President & CEO

6